IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MURILLO MODULAR GROUP, LTD., | § § § | |
| Plaintiff, | § § | No. 3:13-CV-3020-M |
| v. | § § | |
| ANN SULLIVAN AND CRENSHAW, WARE & MARTIN, P.L.C. | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss the Second Amended Complaint [Docket Entry #26] and Alternative Motion for a More Definite Statement [Docket Entry #33], filed by Defendants. For the reasons discussed below, the Motion to Dismiss is **DENIED**, and the Alternative Motion for a More Definite Statement is **GRANTED in part**.

### I.   FACTS AND PROCEDURAL BACKGROUND

This action arises from Defendants Ann Sullivan and Crenshaw, Ware & Martin P.L.C.'s ("Defendants") representation of Plaintiff Murillo Modular Group, Ltd. ("MMG" or "Plaintiff") in an arbitration proceeding in Virginia ("the Virginia Arbitration") and in a lawsuit in Texas ("the Texas Litigation"). The specific allegations set forth in the Second Amended Complaint are described below.

MMG constructed modular buildings on military bases under several U.S. government contracts, as a subcontractor to Atlantic Marine Construction, Inc. ("AMC"). Dkt. No. 25 ¶¶ 6–7. To accommodate its expanding business needs, MMG obtained a $4 million revolving operating line of credit with Compass Bank ("the Revolver"). *Id.* The founders and partners of

1

MMG, Sal Murillo and Nick Mackie, created an entity called Lonestrella, LLC ("Lonestrella"). *Id.* ¶ 8.  To acquire a building and real property on which it would locate MMG's office, Lonestrella borrowed money from Compass Bank and executed a note for $786,250 ("the Note").  *Id.*  According to MMG, the Note and Revolver were cross-collateralized with cross-default provisions that interwove MMG and Lonestrella's financial obligations to Compass Bank.  *Id.*

In 2004, the U.S. government awarded AMC and MMG a $32 million contract to build modular buildings for the U.S. Army and Marine Corps.  *Id.* ¶ 9.  Sometime thereafter, AMC and MMG were awarded another $500 million government contract to build permanent modular facilities for the U.S. Army (collectively, "the Contracts").  *Id.* ¶ 10.

### 1. The Virginia Arbitration

In 2009, MMG and AMC began to dispute the Contracts' overall profitability and allocation of profits, which ultimately led to the Virginia Arbitration.  *Id.* ¶ 11.  MMG hired Defendants to represent it in the Virginia Arbitration.  *Id.*  MMG now claims that Defendants failed to properly represent MMG in pursuing its claims against AMC.  *Id.*

Specifically, MMG alleges that Defendants improperly advised MMG to enter into an inadequate settlement with AMC (the "Settlement Agreement").  *Id.* ¶ 12.  MMG claims that the Settlement Agreement was deficient because:  (1) it caused MMG unknowingly to release its rights to significant revenues under the Contracts; (2) it failed to specify the accounting principles that would apply to profit calculations, which led to further disputes between AMC and MMG, and permitted double-entry accounting, all to MMG's detriment; (3) it lacked an adequate tie-breaking mechanism insofar as it only provided that disputes over profit calculations would be resubmitted to the Virginia Arbitration panel; and (4) it did not provide procedures to

determine the treatment of prior vendor and subcontractor settlements in calculating profits. *Id.* MMG alleges that the deficiencies in the Settlement Agreement caused MMG to endure nearly three years of additional litigation when it had been advised by Defendants that the Settlement Agreement would result in a complete and final resolution of all claims between MMG and AMC. *Id.* ¶ 13.

### 2. The Texas Litigation

MMG claims that AMC's failure to pay MMG the amounts owed under the Contracts caused MMG and Lonestrella to default on the Revolver and the Note. *Id.* ¶ 16. As a result, Compass Bank foreclosed on the real property and building where MMG had its office, and ultimately commenced the Texas Litigation to collect unpaid amounts owed under the Note. *Id.*

As part of the Texas Litigation, Compass Bank foreclosed on MMG's commercial-grade HVAC equipment ("the HVAC equipment"). *Id.* ¶ 17. Under the Settlement Agreement, MMG and AMC agreed that the HVAC equipment was worth $650,000 for the purposes of determining the profitability of the Contracts, and MMG pleads that Defendants knew the HVAC equipment was so valued. *Id.* Despite this knowledge, MMG claims Defendants advised it to allow Compass Bank to auction and sell the HVAC equipment for only $14,690.50, and MMG followed Defendants' advice. *Id.* ¶ 17. MMG asserts that Defendants should have either: (1) sought a further valuation of the HVAC equipment; (2) found an alternative buyer or liquidation method; or (3) brought a legal action to challenge or set aside the sale as commercially unreasonable. *Id.* MMG claims that, had Defendants not advised it otherwise, it would have found an alternative buyer or method to liquidate the HVAC equipment, which would have resulted in MMG receiving more value than it received through the auction. *Id.* MMG argues that the added value could have been applied toward the Revolver and/or Note. *Id.*

### 3. Procedural History

On May 24, 2013, MMG filed suit against Defendants in County Court at Law Number 4, of Dallas County, Texas, alleging claims for negligence, gross negligence, and breach of fiduciary duty, and seeking actual and exemplary damages in connection with the Virginia Arbitration and Texas Litigation. Dkt. No. 1. The action was removed to this Court. *Id.* Thereafter, MMG filed an Amended Complaint. On July 3, 2014, this Court granted in part and denied in part Defendants' Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), holding that MMG stated a plausible claim for legal malpractice under Virginia law insofar as it alleged Defendants' advice caused MMG to release valuable claims when it executed the Settlement Agreement. Dkt. No. 22 at 4. The Court dismissed MMG's other claims without prejudice. *Id.* On July 30, 2014, MMG filed its Second Amended Complaint, which alleges claims for legal malpractice and gross negligence under Texas law, and legal malpractice under Virginia law. Dkt. No. 25.

Defendants again move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Alternatively, Defendants move for more definite statements under Federal Rule of Civil Procedure 12(e).

## II.  LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA,* 840 F.Supp.2d 970, 975 (N.D.

Tex. 2011) (Lynn, J.) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). A plaintiff must make "more than an unadorned accusation devoid of factual support," but need not include detailed factual allegations. *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)). Although courts must presume that the plaintiff's factual allegations are true, "legal conclusion[s] couched as . . . factual allegation[s]" are not given the same deference. *See Twombly,* 550 U.S. at 555.

### III. ANALYSIS

As a preliminary matter, the parties do not dispute that Virginia law applies to the legal malpractice claim relating to the Virginia Arbitration, and Texas law applies to the claims relating to the Texas Litigation. *See* Dkt. No. 26 at 4; Dkt. No. 22 at 2.

**1. Claims Relating to the Virginia Arbitration**

Under Virginia law, "a plaintiff who asserts a cause of action against an attorney for legal malpractice must plead and prove that a relationship existed between them which gave rise to a duty, that the attorney neglected or breached the duty, and that the neglect or breach was a proximate cause of loss to the plaintiff."[1] *Hendrix v. Daugherty*, 249 Va. 540, 544, 457 S.E.2d 71, 74 (1995). It is not enough for a plaintiff to allege negligence or a breach of duty. *Id.* Rather, a plaintiff client must plead that he suffered damages that were proximately caused by the acts or omissions of the defendant attorney. *Id.* (citing *Campbell v. Bettius*, 244 Va. 347,

---

[1] Under Virginia law, "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract. It is the contract formed between an attorney and a client that gives rise to the attorney-client relationship; but for the contract, the attorney owes no duty to the client." *Cox v. Geary*, 271 Va. 141, 624 S.E.2d 16, 22 (2006). To avoid confusion, the Court will generally refer to MMG's claim relating to the Virginia Arbitration as a claim for legal malpractice.

5

352, 421 S.E.2d 433, 436 (1992) ("The client must prove that the attorney's negligence proximately caused the damages claimed")).

Here, Plaintiff makes several distinct allegations of legal malpractice relating to the Virginia Arbitration and the Settlement Agreement that Defendants allegedly advised MMG to execute. The Court will address the plausibility of each allegation in turn. The parties do not dispute that Defendants and MMG had an attorney-client relationship that gave rise to a duty. However, Defendants claim that MMG has not pleaded facts that show a breach of that duty, nor has MMG shown that Defendants' acts or omissions caused MMG the harm it suffered in the Virginia Arbitration; in other words, Defendants contend that MMG has not shown how the Virginia Arbitration would have resolved more favorably to MMG had Defendants offered different advice.

The Court has already held that Plaintiff sufficiently pleaded a legal malpractice claim against Defendants to the extent that such claim is predicated on the value of claims Plaintiff released when it entered into the Settlement Agreement, allegedly on Defendants' advice. *See* Dkt. No. 22 at 4. To the extent Defendants attempt to reargue the plausibility of these specific allegations, the Court rejects those arguments and finds MMG has stated a plausible claim for legal malpractice under Virginia law. *See id.*

Next, MMG alleges that Defendants breached their duty of care by advising MMG to enter into the Settlement Agreement, when the Settlement Agreement did not specify what accounting principles would apply to profit calculations. Dkt. No. 25 ¶ 13. According to MMG, the failure to specify accounting principles led to disputes between accountants for MMG and AMC, and also opened the door to double-entry accounting methods that caused MMG financial

harm. *Id.* Defendants argue that these allegations, without more, do not show that Defendants breached a duty of care.

The Court again finds that MMG has stated a plausible claim for legal malpractice under Virginia law. It is sufficiently clear from Plaintiff's Second Amended Complaint that MMG alleges that, had Defendants negotiated the inclusion of a specific accounting method and advised MMG not to execute the Settlement Agreement without the inclusion of *some* specific accounting method, MMG would not have been forced to relitigate profit disputes in the Virginia Arbitration. The plausible allegation is that, but for Defendants' advice with respect to the Settlement Agreement and the lack of accounting principles specified therein, MMG would not have been involved in costly litigation after the execution of the Settlement Agreement. However, Defendants correctly argue that Plaintiff does not plead with sufficient detail how double-entry accounting methods caused MMG financial harm.[2] Thus, the Court **GRANTS** Defendants' Rule 12(e) Motion for a More Definite Statement and directs Plaintiff to replead its allegations with respect to double-entry accounting and how such accounting caused MMG financial harm. *See* Fed. R. Civ. P. 12(e).

The Court also finds MMG's allegation that the tie-breaking mechanism in the Settlement Agreement was inadequate states a plausible claim for legal malpractice. Specifically, MMG complains that any dispute that arose between AMC and MMG's accountants had to be resubmitted to the same Virginia Arbitration panel, which caused great inconvenience and

---

[2] According to Investopedia, "[i]n the double entry system, transactions are recorded in terms of debits and credits. Since a debit in one account will be offset by a credit in another account, the sum of all debits must therefore be exactly equal to the sum of all credits. The double-entry system of bookkeeping or accounting makes it easier to accurately prepare financial statements directly from the books of account and detect errors." Investopedia, http://www.investopedia.com/terms/d/double-entry.asp (last visited March 31, 2015). Thus, there is nothing inherently nefarious about double-entry accounting.

7

financial harm to MMG.  *See* Dkt. No. 25 ¶ 14.  MMG essentially claims that it was under the impression that the Settlement Agreement would result in a full and final resolution of all its disputes with AMC, but this mechanism amounted to no tie-breaking method at all.  *See id.* ¶¶ 12, 14.  The Court finds that, if true, these allegations state a plausible claim for legal malpractice under Virginia law.  *See Shipman v. Kruck*, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004) ("Although the injury could not be delineated as a sum certain or reflected as a final judgment on the merits, there was injury sufficient to commence a cause of action for legal malpractice.").

Defendants' counter-argument appears to be that, if it provided a tie-breaking mechanism in the Settlement Agreement, it could not, as a matter of law, breach its duty of care.  The Court disagrees.  The Settlement Agreement was apparently executed as a means to end the Virginia Arbitration.  *See* Dkt. No. 25 ¶ 12 (alleging that Defendants advised MMG that the Settlement Agreement would "fully and finally resolve all disputes between MMG and AMC").  Thus, MMG has stated a plausible legal malpractice claim insofar as it alleges Defendants' advice to enter into the Settlement Agreement, with its insufficient tie-breaking mechanism, caused MMG to face needless and expensive additional litigation.  *See Heyward & Lee Const. Co. v. Sands, Anderson, Marks & Miller*, 249 Va. 54, 57, 453 S.E.2d 270, 272 (1995) ("Generally, the questions [of] whether an attorney has exercised that degree of care and, if not, whether the failure was the proximate cause of the client's loss, are to be decided by a fact finder, after considering testimony of expert witnesses.").

Defendants rely on *Hendrix v. Daugherty* to argue MMG has failed to allege how the Settlement Agreement would have been more favorable with different advice, or that MMG would have prevailed in the Virginia Arbitration but for Defendants' advice.  *See Hendrix*, 457

8

S.E.2d at 74.  In *Hendrix*, the Supreme Court of Virginia held that the trial court properly sustained demurrers because the plaintiffs did not allege that they would have prevailed in the underlying action but for the negligence of the defendants.  *Id.*  That pleading failure under Virginia law does not present itself here.  MMG does not allege that it would have prevailed in the Virginia Arbitration with different advice; rather, it alleges that the Virginia Arbitration would have been shorter and less costly had Defendants sought and achieved the inclusion of an adequate tie-breaking mechanism and specified accounting methods in the Settlement Agreement.  *See* Dkt. No. 25 ¶¶ 13–14.  These facts adequately allege that, but for Defendants' alleged malpractice, the terms of the Settlement Agreement, and therefore, the outcome of the Virginia Arbitration, would have been different and more favorable to MMG.  *See Umphreyville v. Gittins*, 662 F.Supp.2d 501, 512 (W.D. Va. 2009) (citation omitted) (explaining that ultimately a plaintiff must present sufficient evidence that the result of the underlying action would have been different).

Finally, the Court finds that MMG's allegation that the Settlement Agreement failed to provide procedures for the treatment of prior vendor and subcontractor settlements in determining profits is insufficiently pleaded because it does not allege how this deficiency caused MMG financial harm.  Thus, the Court **GRANTS** Defendants' Rule 12(e) Motion for a More Definite Statement and directs Plaintiff to replead this allegation.  *See* Fed. R. Civ. P. 12(e); Dkt. No. 25 ¶ 13.

**2. Claims Relating to the Texas Litigation**

Under Texas law, "legal malpractice is a negligence action based on a lawyer's failure to exercise ordinary care as measured by a reasonably competent practitioner standard." *Lam v. Thompson & Knight, LLP*, No. 3:02-CV-2555, 2003 WL 22220666, at *4 (N.D. Tex. Sept. 25,

9

2003) (Buchmeyer, J.). To plead a malpractice claim, a plaintiff must plead facts that show (1) the attorney owed a duty to the plaintiff; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) the plaintiff suffered damages. *Id.* Proximate cause requires cause in fact and foreseeability. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).

Here, Defendants argue MMG has not pleaded any facts that show the scope of Defendants' representation included challenging the Texas foreclosure, or forcing Compass Bank to conduct a different type of sale. Defendants further argue that MMG has not pleaded facts that show it would have received higher value for the HVAC equipment but for the auction and sale Defendants allegedly urged, nor that the sale would not have happened without MMG's consent. According to Defendants, the terms of the Revolver and Note gave Compass Bank the authority to foreclose on the HVAC equipment without the consent of MMG. Defendants also claim that MMG has failed to allege the amount of damages that would have been recoverable in the Texas Litigation had it been properly prosecuted, an essential element of a legal malpractice claim under Texas law. Because Defendants argue MMG's negligence claim fails as a matter of law, it also urges the Court to dismiss MMG's gross negligence claim.

The Court finds that Plaintiff's allegations adequately state a claim for legal malpractice under Texas law.

First, MMG alleges that Compass Bank's collection efforts in the Texas Litigation included foreclosing on the HVAC equipment. *See* Dkt. No. 25 ¶ 17. MMG also alleges that it retained Defendants to represent its interests in the Texas Litigation. *See id.* 25 ¶ 16. These allegations are sufficient to show Defendants owed a duty to MMG to act with ordinary care in representing MMG's interests in the Texas Litigation, which included the auction and sale of the

HVAC equipment following foreclosure. *See Law Office of Oscar C. Gonzalez, Inc. v. Sloan*, 447 S.W.3d 98, 107 (Tex. App.—San Antonio 2014, pet. filed) ("The existence of an attorney-client relationship gives rise to a duty on the attorney's part to act with ordinary care.").

Next, MMG alleges that, although Defendants knew the HVAC equipment was valued at $650,000 in the Settlement Agreement, it advised MMG to authorize Compass Bank to auction and sell the HVAC equipment for only $14,690.50. *See* Dkt. No. 25 ¶ 17. MMG claims that Defendants should have obtained a further valuation of the HVAC equipment, and if necessary, taken legal action to delay the sale until such a valuation could be obtained. *See id.* MMG also contends that Defendants should have challenged the propriety of the sale of the HVAC equipment after it occurred. *Id.* The Court finds that these allegations, if true, state a plausible claim for legal malpractice. It is plausible that a reasonably prudent attorney would have advised MMG not to authorize Compass Bank to auction and sell the HVAC equipment for such a relatively small amount of money given the valuation of the equipment in the Settlement Agreement. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989) (holding that attorney negligence is determined objectively from the perspective of a reasonably prudent attorney). It is also plausible that a reasonably prudent attorney would have advised MMG to obtain a further valuation of the HVAC equipment, sought to delay the sale until such a valuation could be obtained, and/or challenged the propriety of the sale after the fact.[3] *Id.*

---

[3] Because the standard for negligence in a legal malpractice case is whether a reasonably prudent *attorney* could make the same decision in a similar circumstance, MMG's knowing acceptance of Defendants' advice is of no legal import to the breach analysis. *See Cosgrove*, 774 S.W.2d at 664–65. The auction and sale may, indeed, have been a business decision by MMG. *See* Dkt. No. 33 at 8. However, MMG alleges it made that business decision on the basis of Defendants' advice, and that a reasonably prudent attorney would have made known and/or advised a different course of action that would have caused MMG to make a more favorable business decision. *See* Dkt. No. 25 ¶ 8.

11

MMG alleges that Defendants' advice caused it losses in the Texas Litigation that could have been applied toward the Revolver and/or Note. *See* Dkt. No. 25 ¶ 21.  According to MMG, had Defendants not advised it to consent to the auction sale of the HVAC equipment, it would have found an alternative buyer or other method to liquidate the equipment, either of which would have resulted in greater value. *Id.* ¶ 17.  There are two elements of proximate cause— cause in fact and foreseeability. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009).  "Cause in fact must be established by proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ("but for" the act or omission), the harm would not have occurred." *Id.*

Defendants argue that MMG's consent was not required for Compass Bank to proceed with the auction and sale of the HVAC equipment, and therefore, any advice by Defendants to MMG to consent is legally irrelevant. *See* Dkt. No. 26 at 10; Dkt. No. 33 at 7.  They also argue that MMG has failed to plead facts that show how the foreclosure sale would have otherwise been different or more profitable. *See id.*  Defendants appear to confuse an issue of proof with an issue of pleading sufficiency.  MMG consistently alleges that its consent and/or authorization *was* required before the HVAC equipment could be auctioned and sold.[4]  *See* Dkt. No. 25 ¶¶ 17,

---

[4] The Court understands Defendants read Plaintiff's Second Amended Complaint to imply that the HVAC equipment was subject to a deed of trust, and therefore, MMG's consent was not required for Compass Bank to auction and sell the HVAC equipment. *See* Dkt. No. 26 at 10. However, a closer reading of the Second Amended Complaint indicates that MMG's building and real property were subject to the Note and secured by a deed of trust, but not that the HVAC equipment necessarily has. *See* Dkt. No. 25 ¶ 8.  The nature of Compass Bank's security interest in the HVAC equipment is not entirely clear; however, the Court is willing to give MMG the benefit of the doubt. *See id.* ("[T]he Note and Revolver were cross-collateralized with cross-default provisions thus tying together MMG's and Lonestrella's financial obligations to Compass.").  That is, the Court finds that the factual allegations in Plaintiff's Second Amended Complaint "plausibly *suggest* entitlement to relief." *Iqbal*, 556 U.S. at 681.

21. Furthermore, MMG's allegations clearly state that the foreclosure sale would have been different *and* more profitable had it received value for the HVAC equipment that rivaled the equipment's valuation in the Settlement Agreement—$650,000.  *See* Dkt. No. 25 ¶ 17.

It may very well be that MMG will be unable to marshal proof that it could have sold the HVAC equipment at a substantially greater value, or that Defendants' advice was the proximate cause of the loss relating to the HVAC equipment.  *See McMahon v. Zimmerman*, 433 S.W.3d 680, 689 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding no evidence summary judgment was proper because the only evidence adduced to show negligence and causation was unreliable expert testimony); *Saldana-Fountain v. Chavez Law Firm*, 450 S.W.3d 913, 918 (Tex. App.—El Paso 2014, no pet. h.) (holding no evidence summary judgment was proper because party failed to designate any expert who could speak to merits of underlying employment discrimination suit).  However, MMG has stated facts that, if true, show Defendants' purportedly inadequate advice was a proximate cause of the allegedly deficient sale of the HVAC equipment.

MMG has also stated a plausible allegation that it suffered damages because of Defendants' allegedly negligent advice.  Where a plaintiff sues his attorney, damages are "the amount that the plaintiff would have recovered and collected in the underlying suit if it had been properly prosecuted."  *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 848 (Tex. App.—Dallas 2013, no pet.) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 112).  That principle is not easily applicable here, where MMG was the defendant in the Texas Litigation, but MMG alleges that, had its counsel properly advised it regarding the sale of the HVAC equipment, it would have recovered more than $14,690.50, and might have recovered an amount closer to $650,000, the valuation provided in the Settlement Agreement.  *See* Dkt. No. 25 ¶ 17.

Defendants rely on *Akin, Gump, Strauss, Hauer & Feld* to argue that MMG has failed to allege the amount of damages that would have been recoverable and collectible if the Texas Litigation had been properly prosecuted. *See* Dkt. No. 33 at 7. The Court disagrees, and finds that MMG has sufficiently pleaded an amount of damages that would have been recoverable in the Texas Litigation—the difference between the value of the HVAC equipment as provided in the Settlement Agreement and the value of the HVAC equipment as sold at the auction. *See* Dkt. No. 25 ¶ 21. MMG is not required at this procedural stage to provide any more factual details than the aforementioned. *See Iqbal,* 556 U.S. at 678 (explaining that a plaintiff need not include detailed factual allegations to prevail on a motion to dismiss under Rule 12(b)(6)).

Finally, Defendants move to dismiss MMG's claim for gross negligence, arguing that the Second Amended Complaint contains no allegation that an extreme degree of risk was present with respect to any of Defendants' actions or omissions, nor that Defendants were subjectively aware of such risk, but proceeded with conscious indifference to the rights or welfare of MMG. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11) (defining "gross negligence"); Dkt. No. 26 at 12. Defendants argue that MMG made a knowing business decision when it agreed to the sale of the HVAC equipment, and it was Compass Bank that sold the equipment, not Defendants. *See* Dkt. No. 33 at 8. MMG counters that Defendants were aware of the $650,000 valuation of the HVAC equipment in the Settlement Agreement, yet advised MMG to authorize the sale of the equipment for only 2% of that value. *See* Dkt. No. 25 ¶ 21; Dkt. No. 29 at 6–7.

For the reasons already provided with respect to MMG's negligence claim, the Court declines to dismiss MMG's gross negligence claim for failure to state a claim. Again, though MMG may be unable to marshal evidence that shows Defendants' acts or omissions involved an extreme degree of risk, that Defendants were aware of the risk, or that Defendants proceeded

with conscious indifference, those issues cannot be resolved on a 12(b)(6) motion. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (affirming no evidence summary judgment on gross negligence claim against law firm where only evidence of intent or extreme risk was conclusory statements from plaintiff's expert and other counsel). MMG has stated facts that, if true, show a plausible claim for gross negligence.

### IV.   CONCLUSION

The Court **DENIES** Defendants' Motion to Dismiss the Second Amended Complaint, **GRANTS in part** Defendants' Motion for a More Definite Statement, and directs Plaintiff to replead the following allegations on or before April 21, 2015:

1. Defendants' breach of duty regarding double-entry accounting in the Settlement Agreement, and how such accounting caused MMG financial harm; and

2. Defendants' breach of duty regarding their alleged failure to provide procedures for the treatment of prior vendor and subcontractor settlements for profit calculations in the Settlement Agreement, and how the failure to provide such procedures caused MMG financial harm.

**SO ORDERED.**

March 31, 2015.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS